UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN M. CALLAGY,
    Plaintiff,

    v.                                CIVIL ACTION NO.
                                       10-11716-MBB
TOWN OF AQUINNAH,
    Defendant.

**MEMORANDUM AND ORDER RE:
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (DOCKET ENTRY # 24); DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 25)**

**July 27, 2012**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. ("Rule 56"), filed by plaintiff John M. Callagy ("plaintiff").  (Docket Entry # 24). Also pending is a motion for summary judgment filed by defendant Town of Aquinnah.[1]  (Docket Entry # 25).  After conducting a hearing on January 3, 2012, this court took the motions (Docket Entry ## 24 & 25) under advisement.

PROCEDURAL BACKGROUND

As set forth in the amended complaint, plaintiff alleges that defendant unlawfully denied him a parking permit for a parking lot located at Philbin Beach in the Town of Aquinnah on the island of Martha's Vineyard.[2]  The amended complaint sets out three causes of action:  (1) a violation of the Equal Protection

---

[1]  This court refers to defendant Town of Aquinnah as "defendant," "the town" or "the Town of Aquinnah."

[2]  Plaintiff and defendant also refer to the parking permit as a parking pass or a parking sticker.

Clause under 42 U.S.C. § 1983 ("section 1983") (Count One);[3] (2)
a violation of section 2(a) of Massachusetts General Laws chapter
93A ("chapter 93A") (Count Two); and (3) a declaratory judgment
against defendant (Count Three).  (Docket Entry # 19).  Count
Three seeks a declaration that:

> the deed restrictions contained in the deed are
> unenforceable for various reasons, including, but not
> limited to, the fact that the defendant's selective
> enforcement of the deed restrictions amounts to inequitable
> conduct, and/or defendant by virtue of its conduct has
> waived entitlement to rely upon the restrictions.

(Docket Entry # 19).  In Count Three, plaintiff also seeks a
declaration that the deed prevents defendant from providing
parking permits to renters.  (Docket Entry # 19).

Plaintiff moves for summary judgment on counts one and
three.[4]  (Docket Entry # 24).  He submits that defendant has no
rational basis to deny him a parking permit and that he is
entitled to a declaratory judgment that defendant has waived the
deed restrictions by its own actions.  (Docket Entry ## 24 & 35).

Defendant opposes plaintiff's summary judgment motion and,
in turn, moves for summary judgment on all counts.  (Docket Entry
## 25, 26 & 31).  Regarding Count One, defendant argues that
plaintiff fails to satisfy the elements of his equal protection
claim.  (Docket Entry # 26).  Defendant maintains that plaintiff

---

[3]  At the January 3, 2012 hearing, plaintiff conceded that
the equal protection claim was not a "class of one" claim.
Likewise, in his memorandum in opposition to defendant's motion
for summary judgment (Docket Entry # 30), plaintiff acknowledges
that this is not a "class of one" claim.

[4]  Plaintiff does not seek summary judgment on Count Two.

is not being treated differently from similarly situated persons. (Docket Entry ## 26 & 36).   Additionally, defendant asserts that it has a rational basis to deny plaintiff the parking permit. (Docket Entry ## 26 & 36).

As to Count Two, defendant contends that plaintiff fails to satisfy the elements of a chapter 93A violation.   (Docket Entry # 26).   Defendant also asserts that it is not engaging in trade or commerce by furnishing parking permits and as such chapter 93A does not apply.   (Docket Entry # 26)

Regarding Count Three, defendant submits that plaintiff lacks standing to obtain the declaratory judgment.   (Docket Entry ## 25 & 36).   Defendant argues that plaintiff is trying to enforce the deed when he seeks a declaration to prohibit defendant from issuing permits to renters and accordingly section 3(10) of Massachusetts General Laws chapter 214 ("chapter 214"), which requires ten taxpayers to bring a suit, is the governing procedure.   (Docket Entry ## 26 & 36).   Defendant also argues that it does not have the right to unilaterally waive the deed restrictions.   (Docket Entry # 36).   Furthermore, defendant contends that if there is a finding in its favor for the Count One equal protection claim, counts two and three are subject to dismissal under 28 U.S.C. § 1367(c)(3).[5]   (Docket Entry # 26).

---

[5]   Although not stated in the amended complaint or in the original complaint, the civil cover sheet identifies federal question jurisdiction for this action.   (Docket Entry # 1).

STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Davila v. Corporacion De Puerto Rico Para la Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007). Summary judgment is appropriate when the record shows "there is no genuine issue of material fact, and the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Id. Facts are viewed in favor of the nonmovant. See Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

Where, as here, the parties have filed cross motions for summary judgment, the court must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004). "The court does not weigh the evidence, but instead determines 'whether there is a genuine issue for trial.'"

Norotos, Inc. v. Ops-Core, Inc., 2011 WL 3157201, at *4 (D.Mass. July 25, 2011) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249 (1986)).  Each summary judgment motion is reviewed separately and factual disputes are resolved in favor of the nonmoving party.  See Saenger Organization, Inc. v. Nationwide Insurance Licensing Associates, 119 F.3d 55, 56 (1st Cir. 1997).

Local Rule 56.1 provides that summary judgment motions and oppositions thereto are to be accompanied by statements of material facts of record, with page references to affidavits, depositions and other documentation.  Any facts set forth in a moving party's Local Rule 56.1 statement of material facts are deemed admitted if they are not otherwise contested.  Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003); see also Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing Local Rule 56.1 and deeming admitted the undisputed material facts that the plaintiff failed to controvert).

FACTUAL BACKGROUND

The Town of Aquinnah, formerly known as Gay Head, is a municipality located on Martha's Vineyard.  (Docket Entry # 27, ¶ 1; Docket Entry # 33, ¶ 1).  In its 2011 "At a Glance Report for Aquinnah," the town had a population of 311 in 2010 and contained 381 single family parcels in 2011.  (Docket Entry # 24, Ex. 6, pp. 1-2).

5

On or about February 16, 1968, J. Holladay Philbin
("Philbin") executed a deed conveying ocean front property to the
Town of Gay Head.  (Docket Entry # 27 ¶ 2; Docket Entry # 33, ¶
2).  The pertinent provisions of the deed are as follows:

> I, J. Holladay Philbin of Boca Grande, Lee County, Florida
> for consideration paid for, grant to The Inhabitants of the
> Town of Gay Head, in trust for the purposes hereinafter set
> forth, . . . the land in said Gay Head consisting of Lots
> 501 and 502 . . . together with that portion of Lot 700 on
> said plan lying to the southwest of a public highway known
> as Moshup Trail . . ..  Said property shall be held in trust
> *for the use by all permanent and seasonal residents* of Gay
> Head and their accompanied guests for swimming, sun-bathing,
> fishing and related recreational activities.  It . . . is to
> be maintained in a condition which will not detract from the
> pleasure of its use for said purposes. Accordingly, the
> trustee, the said Inhabitants of the Town of Gay Head, shall
> not permit on said property any buildings or structures,
> except as hereinafter provided, nor any use other than as
> above prescribed.  The said trustee may, however, in
> furtherance of the said purposes, construct and maintain any
> one or more of the following facilities, and no others:  a
> parking lot to accommodate not more than forty (40) vehicles
> for the use of persons properly using said Beach, a roadway
> to said parking lot, a pathway to said Beach . . ..  No
> commercial activity or establishment may be undertaken or
> permitted on the granted premises at any time, except that
> the said trustee may make a reasonable charge for parking to
> defray some or all of the cost of maintaining, policing and
> improving the granted premises.

(Docket Entry # 24, Ex. 1; Docket Entry # 27, Ex. C) (emphasis
added).

Defendant recorded the Philbin deed on April 2, 1968.
(Docket Entry # 27, ¶ 6; Docket Entry # 33, ¶ 7).  On May 21,
1968, the Board of Selectmen of the Town of Aquinnah sent Philbin
a letter thanking him for the gift and requesting permission to
change the name of the beach from Moshup Beach to Philbin Beach.

(Docket Entry # 27, ¶ 7, Ex. E; Docket Entry # 33, ¶ 7).  The beach has a parking lot that contains 40 spaces in accordance with the deed.  (Docket Entry # 27, ¶ 8; Docket Entry # 33, ¶ 8).

For each season, defendant requires permanent and seasonal residents to apply for a beach parking permit by filing an application and submitting a fee to defendant's beach administrator.[6]  (Docket Entry # 27, ¶ 9, Ex. A, F & G; Docket Entry # 33, ¶ 9).  There are two different applications for parking permits, one for those who own homes in the town and one for those who rent ones.  (Docket Entry # 27, Ex. A, p. 2).  Both applications for residents and renters require the applicant to list the homeowner's name.  (Docket Entry # 27, Ex. A, p. 2).  A renter must also include his or her name and the duration of the lease so that only one renter is given a parking permit for a given time.  (Docket Entry # 27, Ex. A, pp. 2-3).  The cost of the parking pass varies dependent upon whether the applicant owns a home in the town or rents one and upon the duration of the permit.  (Docket Entry # 27, ¶ 9; Docket Entry # 33, ¶ 9).

Upon receipt of a parking permit application, Feltz, or a seasonal employee hired to issue parking permits, determines

---

[6]  Plaintiff and defendant disagree about the official title of the individual who handles the parking permit requests.  The position is held by Carolyn Feltz ("Feltz"), who defendant maintains is both the Town Clerk and has the separate position of beach administrator.  (Docket Entry # 27, Ex. A).  Plaintiff maintains that Feltz is acting as the Town Clerk when she handles parking permit requests.  (Docket Entry # 33, ¶ 9).

whether the applicant owns a home in Aquinnah or rents one by looking at the list of Aquinnah properties furnished by the assessors office each year.  (Docket Entry # 27, Ex. A, p. 3). Feltz uses the assessors list and the leases of the renters to determine whether an applicant is eligible for a parking permit. (Docket Entry # 27, Ex. A, pp. 2-3).

Both renters and home owners are able to add two extra cars for each application for an additional cost of $15.00 per car. (Docket Entry # 27, Ex. F & G).  Over the course of the summer, defendant provides roughly 1,000 parking permits to homeowners and renters although not all parking permits are "active" or in use at the same time.  (Docket Entry # 24, ¶ 17; Docket Entry # 32, ¶ 17).

The fees collected from the parking permit applications are used to operate and maintain the Philbin Beach.  (Docket Entry # 27, Ex. A, p. 3).  The amount received and the amount necessary to operate the beach vary each year with the demand for parking permits and the maintenance costs.  (Docket Entry # 27, Ex. A, p. 3).  It is difficult to know the exact cost of operating the Philbin Beach because unforeseen events, such as inclement weather, can cause damage.  (Docket Entry # 27, Ex. A, p. 3). Any excess in fee receipts is placed in the town's general fund. (Docket Entry # 27, Ex. A, p. 4).  In 2010, the cost of operating the beach was approximately $16,362.00.  (Docket Entry # 27, Ex.

8

A, p. 3).  That same year, defendant received $29,815.00 in fee receipts.  (Docket Entry # 27, Ex. A, p. 4).

The selectmen of the town do not have a uniform view as to who qualifies as a seasonal resident.  (Docket Entry # 24, ¶ 22; Docket Entry # 32, ¶ 22).  Defendant has provided permits to persons who rent homes for as short a time period as a weekend, concluding that those renters qualify as seasonal renters.  (Docket Entry # 24, ¶ 24; Docket Entry # 32, ¶ 24).[7]

In addition to providing renters who present a valid lease with parking permits, defendant provides a parking permit to a representative of a trust which has a residence in the town.[8]  (Docket Entry # 24, ¶ 7; Docket Entry # 32, ¶ 7).  Defendant also provides parking permits to "WTGH," a Turtle Program.[9]  (Docket Entry # 24, ¶ 7; Docket Entry #32, ¶ 7).

---

[7]  Rose testified that the town provided a parking permit to a renter who resided as a tenant under a lease for five days.  (Docket Entry # 24, Ex. 4, pp. 76-77).  Feltz further testified that should a renter have a lease for a property in the town for three days, she would provide him with a parking permit.  (Docket Entry # 24, Ex. 5, p. 36).  Feltz also testified that she had issued six parking permits to the Outermost Inn.  (Docket Entry # 24, Ex. 5, p. 37).

[8]  Plaintiff alleges that defendant does not determine whether or not the representative is a resident.  (Docket Entry # 24, ¶ 7).  Defendant responds that if a developed property is held in a trust or LLC that the resident of the house is entitled to a beach sticker.  (Docket Entry # 32, ¶ 7).

[9]  The Turtle Program is a summer camp associated with the Wampanoag Tribe of Aquinnah.  The Wampanoag Tribe is a federally recognized Indian tribe which owns land and has members who reside within the physical confines of the town.  (Docket Entry # 32, ¶ 7).

People who arrive on foot are permitted to use the Philbin Beach. (Docket Entry # 24, ¶ 15, Ex. 5, pp. 44-45; Docket Entry # 32, ¶ 15). Defendant does not issue "people passes," meaning that defendant does not require people entering the beach on foot or via bicycle to present permits to establish that they are permanent or seasonal residents or accompanied guests as required under the deed restrictions. (Docket Entry # 24, Ex. 5, p. 43). These bicyclists and pedestrians gain access to the Philbin Beach by walking through the parking lot. (Docket Entry # 24, ¶ 16; Docket Entry # 32, ¶ 16). The parking lot is located in a remote section of the town and access to it is limited. (Docket Entry # 24, ¶ 16; Docket Entry # 32, ¶ 16).

In order to use the parking lot, the operator must have a town issued parking permit affixed to the car. (Docket Entry # 24, ¶ 4; Docket Entry # 32, ¶ 4). Defendant does not monitor whether the people inside the car are residents or accompanied guests. (Docket Entry # 24, ¶ 14, Ex. 5, pp. 34-35; Docket Entry # 32, ¶ 14). A parking attendant at the parking lot checks the permits on the cars. (Docket Entry # 32, ¶ 14).

Plaintiff is a resident of Darien, Connecticut. (Docket Entry # 27, Ex. H, p. 1). He owns and pays taxes for property located in Aquinnah. (Docket Entry # 27, Ex. H, p. 1). Plaintiff's property in Aquinnah is unbuildable. (Docket Entry # 27, ¶ 18; Docket Entry # 33, ¶ 18). Plaintiff is not currently a

resident of the town and was not a resident in 2008, 2009, 2010 or 2011. (Docket Entry # 27, ¶ 13, Ex. H, p. 1; Docket Entry # 33, ¶ 13).

Plaintiff owned a seasonal residence in Aquinnah from 1986 to April 2007. (Docket Entry # 27, ¶ 20; Docket Entry # 33, ¶ 20). In 1986, plaintiff and Robert M. Callagy, Elizabeth S. Callagy, Regina Burke Callagy, Richard Kearns and Anne P. Kearns acquired property at 31 Oxcart Road in Aquinnah. (Docket # 27, ¶ 15, Ex. I; Docket Entry # 33, ¶ 15). On June 1 2006, plaintiff divided his parcel into two lots. (Docket Entry # 27, ¶ 14; Docket Entry # 33, ¶ 16). Lot 1 is a 2.2 acre parcel with a residence.[10] (Docket Entry # 27, ¶ 16, Ex. J). Lot 2 is a 13,600 square foot unbuildable piece of land. (Docket Entry # 27, ¶ 16, Ex. J; Docket Entry # 33, ¶ 16). Plaintiff sold Lot 1 on April 30, 2007, for 3.5 million dollars. (Docket Entry # 27, ¶ 19, Ex. K; Docket Entry # 33, ¶ 19). Plaintiff and others retained ownership of Lot 2. (Docket Entry # 27, ¶ 19; Docket Entry # 33, ¶ 19). Defendant's zoning by-law requires lots for residential use to be a minimum of two acres. (Docket Entry # 27, ¶ 17; Docket Entry # 33, ¶ 17). The zoning by-law prohibits "tenting" or camping on unbuildable lots. (Docket Entry # 27, ¶ 18; Docket Entry # 33, ¶ 18). Plaintiff's current property, Lot

---

[10] Plaintiff denies that Lot 1 is 2.2 acres. (Docket Entry # 33, ¶ 16). This fact is not material to the resolution of the motions presently before this court.

2, is unbuildable under the town zoning restrictions.  (Docket Entry # 27, ¶ 18; Docket Entry # 33, ¶ 18).

In addition to his unbuildable property in Aquinnah, plaintiff owns a seasonal residence in the nearby town of Chilmark.  (Docket Entry # 27, ¶ 21; Docket Entry # 33, ¶ 21). Plaintiff has owned this property since 2005.  (Docket Entry # 27, ¶ 21; Docket Entry # 33, ¶ 21).  Since that time, plaintiff has obtained parking permits to use two town owned beaches in Chilmark.  (Docket Entry # 27, ¶ 22; Docket Entry # 33, ¶ 22).

Plaintiff obtained beach parking permits in Aquinnah from 1986 until he sold Lot 1.  (Docket Entry # 27, ¶ 20; Docket Entry # 33, ¶ 20).  In 2007, after the sale of his property, defendant denied plaintiff a parking permit to use the Philbin Beach parking lot.  (Docket Entry # 27, ¶ 22; Docket Entry # 33, ¶ 22).

On September 28, 2007, plaintiff wrote Camille Rose ("Rose"), a member of the Board of Selectmen, about the denial of a parking permit and requested that defendant issue him a parking permit next year.[11]  (Docket Entry # 27, Ex. N).  After receiving no reply, plaintiff wrote again to Rose on March 8, 2008, stating his intent to reapply for a parking permit and his intention to pursue obtaining one.  (Docket Entry # 27, Ex. O).

---

[11]  Plaintiff addressed letters to "Camille Rose" but in her deposition (Docket Entry # 24, Ex. 4) she is referred to as "Ann C. Rose."

On April 27, 2009, after receiving no response, plaintiff wrote again, requesting that he be granted a parking permit. (Docket Entry # 27, Ex. P).  On May 20, 2009, Attorney Ronald H. Rappaport, Esq., the town attorney, responded to plaintiff, citing the Philbin deed's resident requirement as the reason for the denial of a parking permit.  (Docket Entry # 27, Ex. Q). Plaintiff responded on June 8, 2009, stating that the deed restrictions had not been consistently followed and that the reason to exclude him from receiving a permit, the deed, was arbitrary.  (Docket Entry # 27, Ex. R).  Plaintiff sent Rose a copy of an initial complaint in order to advance his claims for the parking permit on July 27, 2010.  (Docket Entry # 27, Ex. S).

DISCUSSION

I.  <u>Defendant's Motion for Summary Judgment (Docket Entry # 25)</u>

When advancing an equal protection violation under section 1983, a plaintiff must establish that "(1) the conduct complained of was carried out under color of state law and (2) this conduct deprived appellants of rights, privileges or immunities secured by the Constitution or laws of the United States." <u>Macone v. Town of Wakefield</u>, 277 F.3d 1, 9 (1st Cir. 2002).  In order to set out a plausible equal protection claim, the amended complaint must allege facts that he was treated differently from others similarly situated.  <u>See</u> <u>Clarke v. Boscher</u>, 514 F.3d 107, 114 (1st Cir. 2008).  A classification that does not involve

13

fundamental rights or suspect classifications will be upheld if the classification is rationally related to the government interest.  See Armour v. City of Indianapolis, Ind., 132 S.Ct. 2073, 2079-80 (2012).  "Courts accept as adequate any plausible factual basis" that justifies the classification under rational basis scrutiny.  Commonwealth of Mass. v. United States Dep't of Health and Human Services, 2012 WL 1948017, at *4 (1st Cir. May 31, 2012).  The plaintiff bears the underlying burden of proof.  See Armour v. City of Indianapolis, 132 S.Ct. 2073, 2080 (2012).

Defendant contends there is no equal protection violation because plaintiff is not being treated differently from similarly situated individuals.  (Docket Entry ## 26 & 36).  Defendant argues that plaintiff is being treated similarly to the other nonresident taxpayers who are not granted parking permits. (Docket Entry ## 26 & 36).

Groups are similarly situated if "a prudent person looking objectively at the incidents [complained of] would think them roughly equivalent and the protagonists similarly situated . . . 'in all relevant respects.'"  Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008).  The distinction over whether a party is similarly situated is not always precise.  See Barrington Cove Limited Partnership v. Rhode Island Housing and Mortgage Finance Corporation, 246 F.3d 1, 8 (1st Cir. 2001).

Plaintiff fails to establish that he should be compared to

all other taxpayers in the town.  Plaintiff cannot be compared to all taxpayers because he does not reside in the town and does not own property on which he can reside.  Therefore, in accordance with the deed which affords use of the beach only to *permanent and seasonal residents*, defendant correctly asserts that plaintiff should be compared to the other nonresident taxpayers. Plaintiff fails to establish that he is being treated differently from other nonresident taxpayers of the town.  Plaintiff provides no evidence that defendant has provided beach permits to other nonresident taxpayers.  Although defendant has no knowledge of any nonresident taxpayer applying for a permit before this matter arose, at the January 3, 2012 hearing defendant promised that it would deny any future nonresident applicants just as it has denied plaintiff.

Furthermore, defendant argues that even if plaintiff is similarly situated, it meets the rational basis requirement for distinguishing between residents and nonresidents because it has been relying on the Philbin deed.  (Docket Entry ## 26 & 36).  In furtherance of this argument, defendant contends that its interpretations of the terms "resident" and "seasonal resident" are consistent with Massachusetts law.  (Docket Entry # 26).

Conversely, plaintiff advances that defendant has no rational basis for denying him a parking permit because through its actions, defendant lost its entitlement to rely on the

15

Philbin deed restrictions.  (Docket Entry # 24).  Plaintiff argues that defendant never followed the deed restrictions and if it did, it only selectively enforced them.  (Docket Entry ## 19 & 24).  According to plaintiff, defendant fails to enforce the deed restrictions because defendant provides renters with permits, does not have a uniform meaning of "seasonal resident" and does not monitor the people entering the beach.  (Docket Entry # 24, pp. 5-6).  Accordingly, plaintiff argues that the deed is an arbitrary reason to deny plaintiff a parking permit.  (Docket Entry # 24).

When interpreting a deed, "[its] meaning, derived from the presumed intent of the grantor is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances."  Sheftel v. Lebel, 689 N.E.2d 500, 502-03 (Mass.App.Ct. 1998).  Furthermore, "restriction[s] must be construed beneficially, according to the apparent purpose of protection or advantage . . . it was intended to secure or promote."  Commercial Wharf East Condominium Association v. Mumford, 2009 WL 3069003, at *16 (Mass.Land.Ct. Sept. 28, 2009); accord Maddalena v. Brand, 388 N.E.2d 337, 339-40 (Mass.App.Ct. 1979) (same).  On the other hand, "restrictions in a deed are to be strictly construed against the grantor."  Brown v. Linnell, 269 N.E.2d 447, 534 (Mass. 1971).  "[W]ords are to be given 'the fair meaning of the language used, as applied to

the subject matter,' construed in the context of 'the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose' and 'to give reasonable effect to each of its provisions.'" Commercial Wharf East Condominium Association v. Mumford, 2009 WL 3069003, at *16 (Mass.Land.Ct. Sept. 28, 2009). When terms are not defined, courts often use dictionaries to determine their meanings. See Howe v. City of Lowell, 51 N.E. 536, 541 (Mass. 1898) (defining "boulevard" in a deed using the Century Dictionary); see, e.g., Stor/Gard, Inc. v. Strathmore Insurance Co., 2012 WL 1609548, at *5 (D.Mass. May 4, 2012) (defining "landslide" in an insurance contract using Webster's Third New International Dictionary); Commonwealth v. Suave, 953 N.E.2d 178, 183 (Mass. 2011) (defining "menace" in a statute using Webster's Third International Dictionary (1993) and Black's Law Dictionary (1990)).

The issue of selective enforcement depends on the meaning of the words "seasonal resident" derived from the intent of the grantor, Philbin, construed when necessary in light of the attendant circumstances. The deed as a whole restricted the use of the property to "permanent and seasonal residents" and "their accompanied guests" for "recreational activities" and, except for a reasonable parking fee, did not allow any commercial activity. (Docket Entry # 24, Ex. 1; Docket Entry # 27, Ex. C).

The word "seasonal" is defined as "of, relating to, or occurring at a particular season" or "affected by or dependent on a season:  not continuous (as in activity or availability)." Webster's Third International Dictionary, 2049 (2002).  Black's Law Dictionary defines a "resident" as "a person who lives in a particular place" or "a person who has a home in particular place" and clarifies that "a resident is not necessarily either a citizen or a domiciliary."  Black's Law Dictionary 1424 (2009). "Residence" is defined as "the act . . . of living in a given place for some time".  Black's Law Dictionary 1423 (2009).  These definitions do not specify what amount of time is necessary to be considered a resident.  They do, however, limit the term "resident" to a person who lives or has a home in a particular place.  "Seasonal" is defined as of or relating to a season. Applying these common or fair meanings to the deed as a whole, the deed restricts use of the property to individuals who permanently or seasonally live in or have a home in the Town of Aquinnah and the accompanied guests of such individuals. Plaintiff, who neither lives in nor has a home in the town, is therefore not a permanent or seasonal resident within the meaning of the Philbin deed.

Plaintiff also argues that defendant waived or abandoned the deed restrictions because it allows short term renters to use the Philbin beach.  Assuming, for purposes of argument only, that

renters who stay for as short of a time period as a weekend or reside in a local inn are not seasonal residents, plaintiff nevertheless fails to establish that defendant waived or abandoned the deed restrictions.

Here, the Town of Aquinnah acquired the property under the terms of a deed restricting the use of the property to permanent and seasonal residents for recreational activities.  As discussed infra, property conveyed to a town or other governmental body for particular public purposes obligates the town to use the property for those purposes.  Nickols v. Commissioners of Middlesex County, 166 N.E.2d 911, 916 (Mass. 1960).

Plaintiff cites to a number of cases to establish that defendant waived or abandoned the deed restrictions.[12]  Only three of the cases warrant discussion.  These cases involve interpretations outside of Massachusetts and are not on point as they do not involve municipalities violating land held in public trust.

Plaintiff first cites to Bernstein v. Ming.[13]  In Bernstein, the defendants owned a large tract of land which they subdivided into lots thereafter conveyed by deeds.  The plaintiff obtained

---

[12]  Additionally, plaintiff references numerous other cases all of which this court has reviewed.  (Docket Entry # 24, nn. 3-10).

[13]  "Bernstein v. Ming (Cal. Lexis 929)," as cited by plaintiff does not exist.  This court assumes that plaintiff meant to cite Bernstein v. Minney, 96 Cal.App.1stDist. 597 (1929).

ownership of three of the lots.  The defendants sought to rigidly

enforce deed restrictions, requiring land parcels to remain

vacant until 1940 or to be improved only by residences.

Bernstein v. Minney, 96 Cal.App. at 599.  Enforcement of these

restrictions would have resulted in a loss for the plaintiff as

the land would be less desirable for the construction of

residences.  Id.  The court prohibited the defendants from

enforcing the restrictions that they themselves had violated

because the defendants had used restricted property for business

purposes, were clients of businesses on the restricted property

and allowed business to be conducted on other restricted lots.

Id. at 602-03.  Bernstein is different from the case at bar

because property in Bernstein was not land held in public trust.

In addition, the nature of the use (business) diverged sharply

from the permitted restricted use (residences).

     Next, plaintiff cites Margolis v. Wilson Oil, 70 N.W.2d 811

(Mich. 1955), which also fails to support the waiver and

abandonment argument.  The court in Margolis held that

"Abandonment of restrictions by permitted violations and

resultant change of character of the neighborhood amounts to a

waiver."  Id. at 812.  Margolis is distinguishable from

plaintiff's action because the land in question was not public

land.  Plaintiff also fails to show that any permitted violations

on the part of the Town of Aquinnah changed the character of the

neighborhood.   Furthermore, <u>Margolis</u> involved building additional structures in violation of the restriction.   Here, defendant is not seeking to build any structures in violation of the Philbin deed.

Finally, plaintiff cites <u>Tottis v. Dearborn Hills Civic Association</u>, 2002 WL 1340909 (Mich.Ct.App. June 18, 2002).   The court in <u>Tottis</u> prevented the defendants from upholding building restrictions against the plaintiff when they had allowed the restrictions to be violated 43 times prior to the plaintiff's action.   <u>Id.</u>

<u>Tottis</u> is distinguishable for a number of reasons.   First and foremost, the <u>Tottis</u> decision that plaintiff cites was reversed.   <u>Tottis v. Dearborn Hills Civic Association</u>, 656 N.W.2d 525 (Mich. 2003).   In reversing the appellate court's decision, the Supreme Court of Michigan in <u>Tottis</u> upheld the "[t]rial court's finding that the character of the neighborhood had not undergone extensive changes in spite of the violations" of the restrictive covenants.   <u>Id.</u>   Thus, the court therefore found that the neighborhood had not experienced the kind of extensive changes that constitute a waiver because "[t]here is no waiver of restrictions where the character of the subdivision has not been so altered as to defeat the original purpose of restriction." <u>Id.</u>

Even if <u>Margolis</u> and <u>Tottis</u> were to apply, plaintiff fails to show that the character of the beach has been so altered by allowing short term renters, guests or pedestrians to use the beach as to defeat the original purposes of the Philbin deed to make the restrictions unenforceable.  Plaintiff offers no evidence of extensive changes to the town or the beach as a result of the assumed violations.  The most plaintiff establishes is that defendant issued an estimated 1,000 parking permits for a parking lot holding only 40 spaces.  (Docket Entry # 24, ¶ 17; Docket Entry # 32, ¶ 17).

Additionally, plaintiff's argument that he should be given a parking permit due to the arbitrariness of the deed fails because case law does not support his contention that trustees can expressly violate the terms of dedicated property.  Rather, property dedicated for a particular public purpose cannot be used in a different manner in violation of the trust unless the property is taken under eminent domain.  <u>See</u> <u>Nickols v. Comm'r of Middlesex County</u>, 166 N.E.2d at 917; <u>see</u> <u>generally</u> <u>Muir v. City of Leominster</u>, 317 N.E.2d 212, 215 (Mass.App.Ct. 1974) (quoting <u>Robbins v. Department of Pub. Works</u>, 244 N.E.2d 577, 579 (Mass. 1969)).  As explained in <u>Nickols</u>, "Property conveyed to a governmental body, a corporation or trustees for particular public purposes may be subject to an enforceable general public obligation or trust to use the property for those purposes."

<u>Nickols v. Comm'r of Middlesex County</u>, 166 N.E.2d at 917.
Plaintiff's request to receive a parking permit even though he is
a nonresident would expressly violate the deed's resident
requirement.

Moreover, when a trustee has violated the terms of a deed,
the customary procedure is not to void the terms of the deed, but
rather for members of the public to enforce it by filing a writ
of mandamus under chapter 214 or by bringing an action pursuant
to section 10A of Massachusetts General Laws chapter 240
("chapter 240").[14]  <u>See Nickols v. Comm'r of Middlesex County</u>,
166 N.E.2d at 911; <u>Cohen v. City of Lynn</u>, 598 N.E.2d 682
(Mass.App.Ct. 1992); <u>Parker v. Dungan</u>, 2009 WL 5174982, at *1
(Mass.Land.Ct. Dec. 31, 2009).  Chapter 214 unambiguously
provides that:

> Actions to enforce the purpose or purposes of any gift or
> conveyance which has been or shall have been made to and
> accepted by any county, city, town or other subdivision of
> the commonwealth for a specific purpose or purposes in trust
> or otherwise, or the terms of such trust . . . *shall be*
> *commenced only by the attorney general or, with leave of*
> *court, by ten taxpayers of such county, city, town or other*
> *subdivision.*

---

[14]  Count Three seeks a declaratory judgment that the deed
prohibits defendant from issuing parking permits to any person
who is not a guest of a resident, including those who rent
houses.

Mass. Gen. L. ch. 214, § 3(10) (emphasis added).[15]  Chapter 240

dictates that when seeking a declaratory judgment:

> The superior court and the land court shall have concurrent
> jurisdiction of a civil action by any person or persons
> claiming an estate of freehold, or an unexpired term of not
> less than ten years, in land subject to a restriction
> described in section twenty-six of chapter one hundred and
> eighty-four, to determine and declare whether and in what
> manner and to what extent and for the benefit of what land
> the restriction is then enforceable, whether or not a
> violation has occurred or is threatened.

Mass. Gen. L. ch. 240, § 10A.

In _Nickols v. Comm'r of Middlesex County_, the plaintiffs,

taxpayers of Middlesex County, filed suit under chapter 214

against the defendants, the commissioners of Middlesex County,

for violating land dedicated for the public use in the Walden

Pond State Reservation.  _Nickols v. Comm'r of Middlesex County_,

166 N.E.2d 911 (Mass. 1960).  The defendants violated the deed

requiring the "preservation of the Walden of Emerson and

Thoreau," its shores and nearby woodlands by cutting down over

100 trees to improve the beach.  _Id._ at 914 & 919.  The

defendants in _Nickols_ misunderstood the deed restrictions

although still acted in "good faith" even when they violated the

terms.  _Id._ at 921.  Rather than void the terms of deed or the

deed itself, the court in _Nickols_ required the defendants to

remedy the violations.  _Id._

---

[15]  In addition, "Apart from mandamus, the terms of the
trust [can] not be enforced by the public without the Attorney
General's intervention."  _Nickols v. Mass. Dep't of Envtl. Mgmt._,
1994 WL 879819, at *4 (Mass.Super.Ct. March 4, 1994).

Similarly, in Cohen v. City of Lynn, the plaintiffs brought an action of mandamus under chapter 214 to prohibit what they believed was a violation of a deed dedicating land for public use.  Cohen v. City of Lynn, 598 N.E.2d 682 (Mass.App.Ct. 1992). In Cohen, the city violated the terms of the deed by selling the land to a private developer.  Id. at 683.  After determining that the sale was in violation of the deed restrictions, the court declared the conveyance, as opposed to the deed, null and void. Id. at 684.

Just as in Nickols and Cohen, if plaintiff believes that defendant violated the Philbin deed restrictions, he should bring suit with nine other taxpayers to clarify what the restrictions are, what the term "seasonal resident" entails and seek to enforce the restrictions.  He could also bring suit in Massachusetts state court under chapter 240 to determine whether or not providing beach access to renters as a whole violates the deed restrictions.  Even if defendant misinterpreted the term "seasonal resident," plaintiff would not be entitled to the relief of a parking permit as that would be in direct violation of the grantor's intent to restrict nonresidents from using the beach.

Plaintiff additionally contends that defendant violated the deed restrictions by allowing people who walk or travel via bicycle to walk through the parking lot onto the beach without

first establishing their residency.  Plaintiff provides no
evidence that these people who walk onto the beach are not
residents of the town.  Both plaintiff and defendant, however,
acknowledge that the beach parking lot is difficult to gain
access to by foot.  (Docket Entry # 24, ¶ 16; Docket Entry # 32,
¶ 16).

Furthermore, plaintiff fails to provide evidence of
defendant giving other nonresident taxpayers of the town parking
permits.  As the summary judgment target with the underlying
burden of proof on the equal protection claim, plaintiff must
provide facts as opposed to allegations to withstand summary
judgment.

In short, defendant actively upholds the restrictions of the
Philbin deed through the parking permit application process.
While the parking permit application may only address one method
of gaining access to the beach, it still serves the purpose of
preventing people from other towns from gaining access to use the
Philbin Beach.  Moreover, the government does not have to
narrowly tailor its action when applying the rational basis
standard.  See Massachusetts v. United States Dep't of Health and
Human Services, 682 F.3d 1, 9 (1st Cir. 2012) (noting that "Equal
protection claims tested by this rational basis standard,
famously called by Justice Holmes the 'last resort of
constitutional argument,'. . . rarely succeed").  Plaintiff's

26

argument that defendant has no rational basis to deny him the parking permit fails under this forgiving standard.

In sum, plaintiff fails to establish that he is being treated differently from other similarly situated individuals and he fails to meet the underlying burden of proof to establish that defendant has no rational basis to deny him a parking permit. Indeed, the summary judgment record establishes that defendant rationally relied on the Philbin deed restrictions when it denied plaintiff a parking permit for the beach.  Summary judgment is therefore warranted in favor of defendant vis-à-vis Count One inasmuch as there has been no equal protection violation.

Defendant also seeks summary judgment on counts two and three respectively alleging a chapter 93A violation and seeking a declaratory judgment.  (Docket Entry # 25).  In Count Two, plaintiff submits that by refusing to sell parking permits to nonresident taxpayers while selling them to other taxpayers and non-taxpayers alike is an unfair trade practice that violates chapter 93A.  (Docket Entry # 19).  In Count Three, plaintiff seeks a declaratory judgment to prohibit renters from receiving parking permits and additionally seeks a declaration that defendant has waived certain deeds restrictions.  (Docket Entry # 19).  Defendant argues that because Count One has been resolved in its favor, supplemental jurisdiction should be denied for both

counts two and three.[16]   (Docket Entry # 26).   Defendant
additionally argues that the declaratory judgment claim is
subject to dismissal for failure to comply with chapter 214.
(Docket Entry # 26).

      "Under 28 U.S.C. § 1367(c)(3), the Court may decline to
exercise supplemental jurisdiction if the Court has dismissed all
'claims over which it has original jurisdiction.'"   Strunk v.
Odyssey Consulting Group, Ltd., 2011 WL 3567025, at *6 (D.Mass.
Aug. 11, 2011).   "When federal-law claims have dropped out of the
lawsuit in its early stages and only state-law claims remain, the
federal court should decline the exercise of jurisdiction by
dismissing the case without prejudice."   Ramos-Echevarrìa, et al,
v. Pichis, Inc., 2009 WL 50146, at *8 (D.P.R. Jan. 8, 2009).   In
the exercise of this court's discretion, this court declines to
exercise supplemental jurisdiction over the chapter 93A state law
claim.   See Picciotto v. Continental Casualty Co., 512 F.3d 9, 21
(1st Cir. 2008) (noting the "well established requirement that
there be a viable action over which the district court has
'original jurisdiction' before supplemental jurisdiction may be
considered"); see, e.g., Strunk v. Odyssey Consulting Group,
Ltd., 2011 WL 357025, at *6 (D.Mass. Aug. 11, 2011).

      The underlying substantive basis for plaintiff's declaratory

_____

      [16]   Defendant's additional argument that plaintiff has not
met the elements of the chapter 93A claim is not addressed as
this court resolves Count Two on a supplemental jurisdiction
rationale.

judgment claim is not entirely clear.  In Count Three, plaintiff submits that the deed restrictions prevent defendant from providing parking permits to renters and anyone who is not a guest of an Aquinnah resident.  (Docket Entry # 19). Additionally Count Three asks the court to:

> declare that one or all of the deed restrictions contained in the deed are unenforceable for various reasons, including, but not limited to, the fact that the defendant's selective enforcement of the deed restrictions amounts to inequitable conduct, and/or defendant by virtue of its conduct has waived entitlement to rely upon the restrictions.

(Docket Entry # 19).

When determining whether to address a declaratory judgment claim, Wilton v. Seven Falls Company notes, "'There is . . . nothing automatic or obligatory about the assumption of "jurisdiction" by a federal court' to hear a declaratory judgment action."  Wilton v. Seven Falls Company, 515 U.S. 277, 288 (1995).  To the extent that plaintiff's claim relies on equal protection grounds, plaintiff's request is denied for the same reasons as Count One.  To the extent that plaintiff's declaratory judgment does not rely on equal protection grounds, it is based on state law and therefore subject to dismissal for lack of supplemental jurisdiction.

II.  Plaintiff's Motion for Summary Judgment (Docket Entry # 24)

Plaintiff seeks partial summary judgment on the Count One equal protection claim and the Count Three declaratory judgment

claim.  As explained in the previous section and viewing the
facts in defendant's favor as the nonmovant, plaintiff fails to
establish that he is being treated differently from others
similarly situated.  In addition, defendant has a rational basis
for distinguishing between resident taxpayers and nonresident
taxpayers.  Count Three, to the extent that plaintiff asserts a
federal question claim, is decided in favor of defendant.  To the
extent that plaintiff's declaratory judgment claim asserts a
state law claim, it is dismissed for lack of supplemental
jurisdiction under 28 U.S.C. § 1367(c)(3).  For reasons more
fully explained in part I, summary judgment in favor for both
counts one and three is denied.

CONCLUSION

In accordance with the foregoing discussion, defendant's
motion for summary judgment (Docket Entry # 25) is **ALLOWED** and
plaintiff's motion for summary judgment (Docket Entry # 24) is
**DENIED**.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

30